### J. A. FRAZIER v. J. J. GALBRAITH et al.

Eastern Section.    May 22, 1926.

Petition for certiorari denied by Supreme Court October 16, 1926.

1. **Bills and notes. Assignee may not be a holder in due course and still entitled to recover on a note.**
   Under the Negotiable Instrument Act, Ch. 94 Sec. 49 Acts 1899 Codified and Shannon's Code, Sec. 1516a37, transferee of a negotiable instrument transferred without endorsement is vested with all title that the transferer had therein.

2. **Bills and notes. Assignee of a negotiable instrument not holding in due course takes subject to title of transferer at the time of the transfer.**
   The assignee of a negotiable instrument who does not take in due course holds the instrument subject to all defences or equities existing at the time of the assignment, but subsequent defences or equities are not available.

3. **Mortgages. A deed of trust foreclosed by the trustee without authority of the holder of the mortgage is illegal.**
   In an action to have a deed of trust foreclosed where it was shown by the evidence that the trustee of the deed of trust had prior thereto and without the knowledge and authority of the holder of the note, foreclosed the deed of trust, held the foreclosure was illegal and property was still subject to the lien.

4. **Evidence.** Evidence tending to show plaintiff's knowledge of the business methods of a party whom defendant claimed was plaintiff's agent held admissible.

In an action to foreclose a deed of trust and recover on notes where the plaintiff had bought the notes from one Rambo who had prior thereto foreclosed the deed of trust and it was sought to show that he foreclosed the deed of trust as agent of the plaintiff held that evidence tending to show plaintiff's knowledge of Rambo's methods in course of business over a number of years was admissible.

5. **Mortgages.** Party buying land at a trustee's sale where the foreclosure is illegal takes subject to the lien.

Where a party bought land at a trustee's sale under a deed of trust and the trustee's sale was illegal because the foreclosure was not authorized by the holder of the notes, held that the purchaser took subject to the lien created by the deed of trust and that lien was superior to the vendor's lien given by the purchaser.

6. **Brokers.** Party buying notes for the purpose of investment and not for resale is not subject to a privilege tax under the revenue statute.

Where a party buys notes not at a discount and not to resell, but only for investment held that he is not a broker and is not liable to pay the privilege tax required by the revenue statute.

7. **Estoppel.** Delay in bringing suit where the status of the party has not been changed is not such laches as to bar recovery.

Unless the delay in filing suit has caused some change in the relation of the parties which acts to the detriment of the defendant it will not bar plaintiff's right of recovery.

8. **Practice.** Statute requiring court to declare a lien upon recovery for taxes when negotiable instruments have not been listed for taxes is mandatory.

When the fact appears upon the record that negotiable instruments sued upon have not been listed for taxes as required by statute it is made the duty of the court to declare a lien and enforce the collection regardless of whether it is insisted upon by the parties.

9. **Mortgages.** When mortgaged property is illegally sold the party holding the note may either follow the property or the fund.

Where property subject to a deed of trust has been illegally sold the holder of the note may either follow the property and recover his money therefrom, or he may follow the fund constituting the sale price, but he cannot recover from both, and he must elect which he will follow.

Appeal from Chancery Court, of Knox County; Hon. Chas. Hays Brown, Chancellor.

Modified and Affirmed.

Fowler and Fowler, of Knoxville, for appellee.

Frantz, McConnell & Seymore, of Knoxville, for appellant.

PORTRUM, J. This suit is another of the so-called Rambo cases which have passed through this court. We will preface the opening with a short characterization of Rambo. Possessing the highest esteem and confidence of the people, he opened a real estate and brokerage business of great magnitude in the city of Knoxville. During a period of ten years he negotiated 3,373 loans secured by trust deeds,

amounting in the aggregate to more than two million nine hundred and ten' dollars, and a good per cent. of this money is now and has been involved in litigation, and if there should be added to the above sum the great number of loans paid twice, because of his conduct, the total would be substantially increased.

His method was to make a loan secured by trust deed, negotiate the note and thereafter receive payment upon his receipts leaving the note outstanding; he would then without authority release the trust deed and would fail to pay over the proceeds to the holder of the note. In other instances he would require renewal of the note at maturity without delivering the original, which was in the hands of the innocent holder, then negotiate the renewal note. He endorsed and guaranteed payment of these notes to his customers and always paid the interest promptly through his office to the holder, without regard to whether he had collected the interest from the makers.

To a large extent he was operating on the money of his customers, for as many notes as he could sell to his customers he had this amount for investment or loan. But he was not confined to funds of customers entirely, he organized a corporation to carry on his business in the name of S. R. Rambo & Company and sold the capital stock to the public. He then operated as S. R. Rambo or S. R. Rambo & Company as it suited his convenience. Later a corporation was promoted and chartered under the name of the Union Trust Company, the promoters, upon receipt of the charter, met and organized, but made no subscription to the capital stock, and at the same meeting all resigned except the secretary. He carried the charter around in his pocket, presumably, until he sold it to S. R. Rambo for $100. Rambo then termed himself President of the Trust Company and an employee, by the name of Jack, Secretary, he named and used the Trust Company as his Trustee in a great many of the trust deeds from 1915 until the exposure of his operations, but in 1923 the Trust Company was organized and is sued as a defendant in this case.

The facts of this case are:

This suit was brought by J. A. Frazier to enforce collection of two promissory notes dated May 30, 1920, one being for $1,000 and the other for $500 and both of said notes being payable to S. R. Rambo & Company one year after date, executed by J. J. Galbraith and wife, E. P. Galbraith. And on the same date the makers executed a trust deed to Union Trust Company, Trustee, for the purpose of securing the payment of said notes and said trust deed was duly recorded on July 17th. S. R. Rambo, who was President of S. R. Rambo & Company and did business in its name and in his name indiscriminately, negotiated these two said notes to J. A. Frazier and endorsed them on the back personally, failing to endorse them in the name of S. R. Rambo & Company. Frazier paid value and pur-

chased them before maturity. At the date of maturity, namely, May 30, 1921, Rambo remitted to J. A. Frazier the interest due thereon as was his custom notwithstanding the fact that the makers had defaulted in the payment of interest for the principal obligation. So on July 18, 1922, without knowledge on the part of J. A. Frazier, S. R. Rambo or S. R. Rambo & Company undertook to foreclose said trust deed in the name of the Union Trust Company, Trustee, when C. B. Johnson, an employee of Rambo or S. R. Rambo & Company, bid in the property for the amount of the debt due, interest and incidental costs of foreclosure, but he paid no part of the amount bid and merely supposedly held the title to the property for the benefit and purposes of Rambo & Company, until August 3, 1923, at which time S. R. Rambo permitted J. P. Galbraith, the maker of the note and the owner of the property, to redeem the same. And in order for him to obtain the money to redeem the property and thereby protect his equity, as he thought, he made a sale of the property to B. M. Gaston for the sum of $5,000. So on the same date J. J. Galbraith paid Rambo & Company the sum of $1,805, principal and interest, attorneys fees and costs due on said note. And in consideration of this payment Rambo & Company directed C. B. Johnson, its agent who purported to hold the legal title acquired at the trust sale, to execute a deed to the purchaser of Galbraith, namely, B. M. Gaston, for a recited consideration of $1 cash balance $5,000 evidenced by one note dated August 3, 1923, and payable on or before three years from date to J. J. Galbraith, who sold the said note to E. E. McMillan for value and before maturity, and from the proceeds of the sale procured the money with which to satisfy Rambo & Company. This last-named note was secured by a specific vendor's lien reading in the face of the deed to B. M. Gaston.

Rambo or Rambo & Company had directed and prosecuted the so-called foreclosure proceedings and had had the Union Trust Company execute a deed to C. B. Johnson purporting to convey the legal title out of the Trust Company and into Johnson. S. R. Rambo signed and acknowledged the deed as President of the said Trust Company and Jack did the same as Secretary. And during all the time Mr. J. A. Frazier was resting secure in the possession of the note, having received the interest payment for another year. It goes without saying that Rambo & Company did not apply the $1,805 to the satisfaction of the note held by Frazier.

In the spring or summer of 1924 Rambo's methods were exposed and due to the exposure J. A. Frazier made an investigation of the status of his note when he found the facts to be as above detailed, but in this case Rambo had not released the lien on record and it would not have been necessary because of the foreclosure sale, if the same be regular. Frazier then placed the notes in the hands of his

attorneys for collection and suit was instituted, making J. J. Galbraith, E. E. McMillan, B. M. Gaston and the Union Trust Company as well as C. B. Johnson parties defendant. Johnson has dropped out of the suit. Their defense to the proceeding is that since the note was not endorsed by S. R. Rambo & Company the endorsement of S. R. Rambo individually was not sufficient to constitute J. A. Frazier a holder in due course, and since the note was never endorsed by the said company, then it is a non-negotiable paper and subject to all defenses and equities as if it were in the hands of the original payee. Also that the foreclosure proceeding was regular, made upon the authority of J. A. Frazier, and if not, Frazier is estopped to question the procedure; and that McMillan, the holder of the $5,000 note secured by vendor's lien is an innocent holder for value without notice and his security is superior to the lien of J. A. Frazier. Other defenses were made which will be referred to in the treatment of the assignments, the foregoing being the principal defense.

The Chancellor was of the opinion that the defenses were not well taken and he granted a recovery in favor of J. A. Frazier for the amount of the notes, interest and attorneys fees, declaring the recovery a prior lien upon the property described and ordered a sale in satisfaction thereof, unless paid into court within a stipulated time, and directed distribution, first, the payment of the Frazier claim, second, the payment of the McMillan claim, and third any balance to be paid B. M. Gaston. From this decree the defendants, J. J. Galbraith, Union Trust Company, E. E. McMillan and B. M. Gaston have appealed. J. J. Galbraith has prosecuted a writ of error from the decree complaining because the Chancellor refused to hold the Union Trust Company liable for the proceeds which should have come into its hands by reason of the foreclosure proceedings and it was its duty to see to the proper application thereof. The defendant's appeal will be first considered.

ASSIGNMENT: "(1) The Chancellor erred in holding that the complainant is entitled to collect said notes although not endorsed by S. R. Rambo & Company and in failing to hold that the complainant is not a holder in due course of said notes because the negotiation of said notes does not take effect until the date the notes are actually endorsed by S. R. Rambo & Company, and the notes are subject to equities which intervene because of the defenses of the defendants in this cause."

The Chancellor did not necessarily hold, by granting a recovery, that the complainant was a holder in due course. He may be an assignee and still entitled to recovery. This assignment calls for a construction of the Negotiable Instrument Act, ch. 94, sec. 49, Acts 1899, codified in Shannon's Code, sec. 3516a37, and reading:

"TRANSFER WITHOUT ENDORSEMENT, EXECUTION OF—Where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made."

Section 3516a66 of said Code, being section 58 of the said Act, provides:

"DEFENSES AGAINST ONE NOT HOLDER IN DUE COURSE—In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable . . ."

The notes in question were made payable to the order of payee, S. R. Rambo & Company, its President endorsing the notes individually. The appellee, J. A. Frazier, does not insist that he is a holder in due course and we will take no notice of Rambo's relationship with his company but treat the notes as non-negotiable instruments as provided in the last above quoted section.

He, therefore, stands as an assignee of the instrument, having the right to rely upon the possession of the note by Rambo unendorsed, because an instrument negotiable in character may be assigned in parole and delivery, which carried with it the lien or security for its payment. Cleveland v. Martin, 2 Head, 128; Clark v. Jones, 10 Pick., 641. And the possession of Rambo presumes his ownership. Hobson v. Hoge, 8 Yerger, 153.

Treating Frazier as an assignee of the note, for certainly the endorsement of Rambo is equivalent to an assignment to him from Rambo, then what is the status of the assignee? The assignment of negotiable paper, though not negotiable by the law merchant but made assignable by law, will pass the legal interest and entitles the assignee to sue in his own name. Insurance Co. v. Hamilton, 37 Tenn., 268; Smith v. Hubbard, 1 Pick., 306; Willis v. Mann Construction Co., 145 Tenn.; 318. Shannon's Code, 3516. But it is insisted the assignee holds the paper subject to all defenses and equities as if the paper were in the hands of the assignor. The assignee insists that this is the general rule but it should be qualified to the extent that he holds subject to all defenses or equities existing at the date of the assignment, and that subsequent defenses are not available. The authorities bear out the contention of the assignee, Frazier, when considering ordinary assignments.

"The court (In Trust Company v. Bank, 91 Tenn., 336, 15 L. R. A., 710), in discussing the case of Spaulding v. Bachus, 122 Mass.,

553, 23 Am. Rep., 391, said 'that its holding is not necessarily inconsistent with the right of set-off as between the original parties, and appears entirely consistent with the decisions of this court that a right of set-off to be so attached to the debt as to be available against it in the hands of an assignee for valuation, must be complete and perfect at the date of the assignment. Gatewood v. Denton, 3 Head, 381; Litterer v. Berry, 4 Lea, 193; Catron v. Cross, 3 Heis., 584.' " Lumber Co. v. Lumber Co., 128 Tenn., 15.

"It is true, the general rule is that the assignee of negotiable paper for a pre-existing debt is not a holder in due course of trade without notice, and hence with respect to existing equities he stands in the shoes of the assignor; but the assignee does not continue to stand simply in the shoes of the assignor, especially after notice, so that his right to enforce the payment of the debt may not be defeated by the subsequent acts of the assignor or debtor." Taylor v. Durkin, 9 Lea, 523.

The notice referred to is only necessary on a consideration passing from the assignee to the assignor as a past consideration and for a pre-existing debt.

We think the force of the negotiable instrument statute, sec. 49, vests the assignee with all the rights of an assignee by a formal written assignment, if by virtue of this statute he holds the legal title of whatever interest the transferer had, certainly a formal written assignment could confer no greater right, then the title should be treated the same in each instance; therefore, if we are in error in concluding that the assignment was in parol and delivery, still the statute confers all the rights that would have passed by formal assignment. If this is true, then the rule as applicable to a non-negotiable instrument applies.

But sec. 49, supra, has been construed by the Supreme Court in the case of Landis v. White, 127 Tenn., 504, and the defendants insist the construction placed upon the section in that case controls the instant case. The court there said:

"The Court of Civil Appeals properly found from the record in this case that the consideration for which the notes were given had failed, and that defendants could successfully have resisted payment thereof in a suit brought by the Western Manufacturing Company itself.

"Under the statute just quoted, where the notes are transferred without endorsement, the transferee, the complainant here, stood in the same attitude in which the transferer would have stood, had the suit been brought by the latter.

"A defense good against the transferer, is likewise good against a transferee without endorsement. Complainant was therefore not entitled to any recovery. Marling v. Fitzgerald, 138 Wis.,

93, 120 N. W., 388, 23 L. R. A. (N. S.) 177, Manufacturers' Commercial Co. v. Blitz, 115 N. Y. Supp., 402.''

The defense in the Landis case was a failure of consideration which existed prior to the assignment. The rule there stated certainly is the general rule. The case quoted in the above excerpt of Marling v. Fitzgerald, and which was the basis of the above construction, contains the following:

"There is this further insurmountable difficulty in sustaining the judgment. The rule that a negotiable instrument in the hands of an assignee for value and without notice of defenses as between the original parties is subject, nevertheless, to such defenses, has relation to such equities or defenses as existed at the time of the transfer, not to latent defenses or equities which possibly may, at some future time, exist. As said in Bush v. Cushman, supra: It does not embrace 'equities or defenses springing from default, or even fraud of the assignor, committed subsequent to the assignment, and which had no existence, and were simply possibilities, at the time of the assignment.'

"The same doctrine was applied in Coster v. Griswold, 4 Edw. Ch., 364. The views of the court are thus expressed:

" 'All that the court of law or equity can do in such cases, since they recognize and protect the rights of assignees of choses in action, is, to allow them to take, subject always to any defense, legal or equitable, which existed in favor of the debtor against the original holder or creditor at the time of the transfer or assignment. Now, the question arises: What existing equity or defense was there against these bonds when they were pledged to the United State Bank as collateral?' And again, 'where an assignee takes in good faith, his right to hold will not be disturbed or divested by any subsequent event or after-accruing right or equity of the debtor.'

" 'To the same effect are Chance v. Isaacs, 5 Paige, 592; Cornish Bryan, 10 N. J. Eq., 146; Losey v. Simpson, 11 N. J. Eq., 253; Murray v. Lylburn, 2 Johns, Ch. 442; Flemming v. Hoboken, 40 N. J. L. 270; North Bergen v. Eager, 41 N. J. L. 184; Ex parte Hale, 3 Ves. Jr. 304; Terney v. Wilson, 45 N. J. L. 282.' ''

In the case of Hight v. McCulloch, 150 Tenn., 117, the court quoted from 2 R. C. L., 629, approvingly as follows:

"The assignee of a non-negotiable chose in action normally takes it subject to all equities and defenses which could have been set up against it in the hands of the assignor at the time of the assignment, and in those cases in which notice of an assignment must be given to protect the assignee, subject also to equities which may arise after the assignment but before due notice has been given to the debtor.''

The court quoted from 8 Corpus Juris, 805, as follows:

"Set-offs subsequently acquired, even though arising out of a previous transaction, cannot be set up; but this rule does not apply to equities not constituting set-offs which grow out of the original transaction or subject-matter of the contract between the parties to the note and are not discovered until after the transfer."

The equities advanced as a defense in this case, namely, the payment of the $1,805 by Galbraith to Rambo as a redemption of the foreclosure, and the satisfaction of the original debt all accrued long after the transfer of the original debt to Frazier. Applying the above rules the defense is not available as against Frazier and the assignment of error is overruled.

ASSIGNMENT: "(2) The Chancellor erred in holding that the complainant is entitled to recover in the sum of $1,818 and the costs of the cause from J. J. Galbraith and is entitled to foreclose said trust deed and sell said premises, and in holding that the said foreclosure of the said trust deed is void, invalid and unauthorized."

All but the last portion of this assignment is answered by what has been said in reference to assignment number one, the question of the legality of the foreclosure has not been dealt with. All of the proof in the record bearing on this question is the defendants' proof which is to the effect that the act of Rambo as President and Jack as Secretary was not authorized by the corporation, the Union Trust Company. This being true, the foreclosure proceeding was necessarily illegal because unauthorized, unless J. A. Frazier is bound by the conduct of Rambo on the ground that he was his agent. This question will be dealt with in another assignment.

ASSIGNMENT: "(3) The Chancellor erred in holding that the payment of said notes on August 2, 1923, by J. J. Galbraith was not authorized by the complainant and that S. R. Rambo and S. R. Rambo & Company were not the authorized agents of the complainant and authorized to receive payment of said notes."

The ninth assignment will be treated under this assignment. It pertains to the exclusion of certain depositions by the Chancellor which undertook to deal with Rambo's methods in course of business during many years, and it was sought to be shown that Frazier was acquainted with his methods. These same witnesses testified in another Rambo case recently determined by this court, and their testimony is practically the same. The style of the case was Belle Ross Haun v. D. K. Eckel, et al, and upon authority of that case the testimony excluded was competent for what it was worth. The ninth assignment is therefore sustained, but the third assignment is overruled upon the same authority. The court in that case elaborately reviewed

the evidence and the law in reference to agency, and held under similar facts that an agency actual or implied did not exist.

The fourth assignment is to the effect that the Chancellor should have held that Rambo was authorized by the complainant to foreclose the trust deed. The complainant had no knowledge of the foreclosure proceedings, and as stated, he at the time had collected his interest and was not expecting payment of the principal for another year. He further states that he had no knowledge of Rambo ever foreclosing any of his securities or any other security, he therefore was not authorized by Frazier to make the foreclosure. For the same reasons he is not estopped. If the proof is insufficient, as heretofore held, to create an implied agency, it is also insufficient to create an estoppel, one character of an implied agency is based upon an estoppel by conduct.

The sixth assignment is that the Chancellor erred in holding that defendants, J. J. Galbraith and B. M. Gaston, were not innocent purchasers of said property when J. J. Galbraith redeemed said property and paid said notes. And the seventh issue is that he committed error in holding that E. E. McMillan was not an innocent purchaser of said note of $5,000 which was secured by vendor's lien on said property, and in holding that the vendor's lien was inferior to the trust deed which secured Frazier's notes. The Chancellor did not necessarily hold that both of these parties were not innocent purchasers, and they are free to assert their rights as such against the makers of the note, he held that the lien created by the trust deed was superior to the vendor's lien, and in this he was correct. A party who purchases property must stand at his peril upon his examination of title; the rule of caveat emptor applies.

ASSIGNMENT; "(8) The Chancellor erred in holding that the complainant had not failed to comply with the revenue statute by paying a privilege tax for dealing in securities, etc."

The proof shows that the complainant made several investments with Rambo, he did not purchase the notes at a discount or to sell but only as an investment. This question has been adjudicated in the consolidated cases of A. Kingman Moore v. J. C. Rutherford and J. C. Sneed v. J. C. Rutherford, recently determined by this court, and affirmed by the Supreme Court, which was decided adversely to the appellant upon practically the same facts, therefore the assignment is overruled.

ASSIGNMENT: "(11) The Chancellor erred in holding that the complainant had not been guilty of laches and negligence and, therefore, estopped himself from collecting the notes involved in this cause."

He only delayed bringing suit until Rambo's failure, it is shown that he probably suspected Rambo a few months before the failure,

but this could have availed the defendants nothing had he brought his suit at that time for the foreclosure took place months before then. We find nothing to create an estoppel against him.

The twelfth and last assignment is that the Chancellor erred in taxing the costs of the cause against defendants, because it was shown that the complainant had not listed his notes for taxes as required. This assignment is, therefore, sustained and a lien is declared upon recovery for state, county and municipal taxes for the years shown to be delinquent. It is insisted that none of the parties insisted upon this, but when the facts appear it is made the duty of the court, by the statute, to declare a lien and enforce the collection.

All the assignments of error of the appellant are overruled and the case upon appeal is affirmed. J. A. Frazier filed the record for error and has assigned as error the action of the court in not granting a judgment in his favor against the Union Trust Company for a misappropriation of the funds. He clearly is not entitled to enforce his claim against the property and also obtain a judgment against the Trust Company. When he elected to follow the property he cannot follow the fund, otherwise, if the property was insufficient to pay his debt, he might collect the residue from a third party. His assignment is overruled and the case is affirmed.

The case will be remanded to carry out the decree of the lower court as modified, in reference to the payment of taxes, by this court and the costs of the appeal and writ of error are taxed against J. A. Frazier.

Snodgrass and Thompson, JJ., concur.