NUTTING, Respondent, vs. MINNESOTA FIRE INSURANCE COMPANY, Appellant.

*November 18 — December 10, 1897.*

*Insurance: Delivery of policy: Parol evidence.*

1. An insurance agent, on handing a policy to the broker who was acting for the insured, said that he would like to keep it a few days until he knew whether the insurer would carry the risk, and then took it away and retained it, and did not notify the broker of the insurer's refusal to carry the risk. *Held*, that there was no completed contract of insurance, because the policy was never delivered.

2. Parol evidence is admissible to show that a writing, which is in form a complete contract, of which there has been a manual tradition, was not to and did not become a binding contract until the performance or occurrence of some condition precedent resting in parol.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

This action was brought for the recovery of a loss sustained by the plaintiff on his hotel building and barn at Midway, Wisconsin, under a policy alleged to have been issued by the defendant company to him, set out in the complaint; and the question vital to the case is whether the alleged policy ever became an operative and binding contract, the defendant denying that it was ever in force.

Harrison Griswold testified on behalf of the plaintiff, in substance, that he was a member of the firm of Haloway & Griswold, in the insurance business, about three years; and that the firm received from the plaintiff a verbal application about September 26, 1895, for some insurance; and that he told plaintiff they could not insure the property, but that he thought Magill & Burke would carry it, as they had carried it one year before. He applied for $1,000 insurance, and left with them the money to pay for it. Before October 1st,

witness met Mr. Burke on the sidewalk, and talked about the risk in question. "He asked me if they wanted it renewed, and I said, 'Yes.' He said he could not put it in the same company that he had carried it in the year before, but would put it in another company. I said that would be all right. · The next time I saw him, he brought the policy over to my office, and laid it on the table. I took down the number, in my register, of the policy, and then he said he would like to keep it a few days, because *he did not know whether the company would carry it or not*, as other companies had refused to carry country property. So he took the policy home with him, but was to let me know whether the company carried it or not." Witness did not think he informed him at that time that the policy had been paid for. They "had been dealing with the firm of Magill & Burke, so that charges were made against our firm for policies issued at our request." They had carried this same property before. "I didn't hear anything about that policy till after the fire. I then went over to Mr. Burke's office to see about the policy. I was informed there that the policy had been canceled. I had never heard anything of the cancellation of that policy prior to that time. The premium that I received from the plaintiff was in my possession all the time. I never paid it to Magill & Burke. Met Burke on the street a number of times after he took the policy away. I never asked him anything about it. I never offered to pay Magill & Burke any premium on this policy. I don't think they ever presented a bill. My idea was that he had sent the policy up to *Mr. Nutting*. He didn't deliver the policy to me. I know positively that that policy was never left in my office for any length of time. It was not in my office from the 1st to the 10th of October. It was like this: He brought the policy in to me. I took the number down as I have it in this book, and he said he would like to keep it

two, three, or four days, to see whether the company would carry it or not. If they didn't, he would let me know. That is customary. I understood he would bring the policy back to me."

At the close of the testimony the defendant moved for a nonsuit upon the ground that the testimony showed that the policy was never delivered to take effect. This motion was denied.

James C. Moody, secretary of the defendant company, testified that a book which he produced showed a daily report from Magill & Burke on the property owned by *Mr. Nutting.* The entry is as follows: "The number is 54,557, void. *C. W. Nutting,* dwelling and barn, Midway, Wis., Oct. 5, 1895, one year 1896,— $1,000. I cannot state from that when that daily report was received at our office. The first record was placed here when the daily report came in, and the second one, marked void, and erased, was on account of the policy having come in as void,— not in force. I judge that the policy was marked void after the policy came back to us,— from the record."

Mr. Burke, of the firm of Magill & Burke, testified to the request of Mr. Griswold to renew the insurance on the property. He told him that they could not, as they were not agents; that they had one company writing outside business (the *Minnesota Fire*), but it was questionable whether they would take the hotel risk at Midway, and he said that he would submit the question to them, write the policy, and send in a report right away, so they would have time, "*before the policy goes into effect, to either accept or decline* the risk." He said that was all right. This was October 1st. Their policy expired on the 5th. "We wrote the report and sent it off on the 1st. The record of the compact office shows our report went through on the 1st. I got a reply on the 3d as follows:

Nutting vs. Minnesota Fire Ins. Co.

'Minneapolis, Oct. 3, 1895.
'Messrs. H. B. Magill & Burke,
'La Crosse, Wis.

'Dear Sirs: 54,557, *C. W. Nutting.* We are in receipt of above daily report, covering a thousand dollars in Midway, Wis. We beg to say we are not writing outside business in your section in towns of less than 300 population. We therefore have to ask you to relieve us of liability under above policy. Send same to us at your earliest convenience.

'Very truly yours,
'James C. Moody,
'Sec'y & Manager.'"

Further testifying, the witness Burke said: "At the time we sent off the report, we wrote the policy on the 1st day of October, and I delivered it in person to Mr. Griswold on that day. Told him, when I handed it to him, pretty much what I told him when he gave us the order for the insurance,— that it was doubtful whether the company would carry it, and I would like to have him hold the policy, and not deliver it to *Nutting,* till we got word from the company, one way or the other, about it. He said he would do so. Upon receipt of this letter, as soon as I got through with my mail, on the same day, I took this letter, and started over to Mr. Griswold's office, for the purpose of telling him what the company had written. I met Mr. Griswold on the corner between our office and the tobacco store, showed him the letter, and asked for the return of the policy. He remarked to me: 'I suppose we are entitled to five days, under the terms of the policy.' I said: 'Inasmuch as this policy has not taken effect, I guess you are not entitled to any consideration of that kind.' He said he would send the policy over right away. We did not get policy immediately. During the next four days I went over to his office three or four times before we got in. He was off on insurance business. I met him two or three times on the street, and told him we would like to get the policy. On the 9th, not having re-

ceived the policy, I wrote the.company the letter, a copy of which we have here. I got the policy on the 10th. Mr. Griswold brought it into my office as I stood at my desk. I turned it over to our policy clerk, to be returned through the usual channel, which was through our compact office, and it was returned in that way. When the policy was written, we charged it up to Haloway & Griswold; and, when it was brought back, we credited the policy back."

On behalf of the defendant a letter written by Magill & Burke to the insurance company October 9, 1895, was put in evidence as follows:

"Oct. 9th, 1895.

"Jas. G. Moody,

"Mgr. of Minnesota Fire Ins. Co.,

"Minneapolis, Minn.

"Dear Sir: Referring to your favor of Oct. 3rd, ordering cancellation of 54,557,— *C. W. Nutting*,— we have given formal notification of the cancellation of this policy, and will doubtless receive the policy within a day or so.

"Yours truly,

"H. B. MAGILL & BURKE."

Mr. Griswold, recalled, testified that Mr. Burke never showed him the letter of the defendant company, or any other pertaining to the policy; that he never notified him in any way that the policy had been canceled, or that it was not to go into effect; that he did not know anything about this until after the fire; that he never saw the policy after he took it away; and that he did not bring it back to Burke's office on the 10th of October.

The defendant's counsel asked the court to direct a verdict for the defendant, which request was refused. The case was submitted to the jury, and the plaintiff had a verdict and judgment for $862.15, from which the defendant appealed.

*H. W. Chynoweth*, for the appellant.

*Ray S. Reid*, for the respondent.

Nutting vs. Minnesota Fire Ins. Co.

PINNEY, J. The undisputed evidence shows that the policy of insurance upon which the action is founded was never delivered by the defendant as a completed contract, and that no contract of insurance was concluded between the parties. It is evident that there was no meeting of their minds, in the legal sense of the term. The evidence of Griswold, the plaintiff's agent, who was seeking to perfect a policy of insurance for him for $1,000 on the property in question, and for one year, is quite decisive: The policy was written and was handed to him by Burke, of the firm of Magill & Burke, agents for the defendant. "He [Burke] said he would like to keep it a few days, because he did not know whether the company would carry it or not. So he took the policy home with him, but was to let me [Griswold] know if the company would carry it or not." He met Mr. Burke on the street quite a number of times after he took the policy away. "I never asked him about it. Burke did not deliver the policy to me [Griswold]. My idea was that he [Burke] had sent the policy to *Nutting* [the plaintiff], and that, if the company did not carry the policy, that he [Burke] would let me know." Burke testified that the policy was written October 1st, and delivered by him in person to Griswold on that day, and he told Griswold when he handed him the policy pretty much what he told him "when he gave us the order for the insurance,— that it was doubtful whether the company would carry it, and I would like to have him hold the policy, and not deliver it to *Nutting*, till he got word from the company, one way or the other, about it. He said he would do so." Burke testified that he was to submit the question to them, write the policy, and send in a report right away, so they "would have time before the policy goes into effect to either accept or decline the risk." He (Griswold) said that was all right. Griswold testified that Burke said that, if the company did not carry the risk, he would let him know.

Nutting vs. Minnesota Fire Ins. Co.

Although the policy was placed in the physical custody of Griswold, and he had a momentary manual possession of it, yet this was not for the purpose of completed delivery, or to make the policy presently operative, but quite the reverse. This result was what both Griswold and Burke sought to avoid, unless and until it could be ascertained whether the defendant company would assent to and carry the risk. Accordingly, Griswold kept the money put into his hands to pay the premium, and Burke took the policy home with him. The defendant had not yet acquired any right to the money of the plaintiff for the policy; for it was to be operative upon a condition that did not occur, namely, that the defendant would accept the risk. The plaintiff's agent, Griswold, should have pressed the matter to an early and decisive conclusion, obtaining a consent to, or refusal of, the risk. The failure of Burke to notify Griswold of the defendant's refusal to carry it would not place it under any contract obligation to the plaintiff. Parol evidence is admissible to show that a writing which is in form a complete contract, of which there has been a manual tradition, was not to and did not become a binding contract until the performance or occurrence of some condition precedent resting in parol. *Reynolds v. Robinson,* 110 N. Y. 654; *Juilliard v. Chaffee,* 92 N. Y. 529, 535; *Benton v. Martin,* 52 N. Y. 570; *Brewers' G. Ins. Co. v. Burger,* 10 Hun, 56; *Ware v. Allen,* 128 U. S. 590, 595; *Burke v. Dulaney,* 153 U. S. 228; *Adams v. Morgan,* 150 Mass. 143; *Faunce v. State Ins. Co.* 101 Mass. 279.

The undisputed evidence shows clearly that there was never any delivery of the policy in suit, and that there was not a completed contract of insurance between the parties. The circuit court erred, therefore, in denying the defendant's motion for a nonsuit, and in refusing to direct a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.