MARLING, Appellant, vs. FITZGERALD and another, imp.,
Respondents.

*January 28—February 16, 1909.*

*Bills and notes: Consideration: Agreement to advance money: Trans-
fer without indorsement: Defenses: Estoppel.*

1. A note and mortgage were delivered to the payee, one H., a
dealer in such securities, upon his agreement to advance the
money subsequently as the maker should need it for a building.
The maker knew that H. was likely to transfer the securities
to an innocent third person. The mortgage was recorded and
H. thereupon assigned and delivered it and the note as collat-
eral security for his own note to one who took the securities
in good faith without knowledge of the agreement between H.
and the maker, but the note was not indorsed so as to make the
assignee a holder in due course. After the assignment H. wholly
failed to make the agreed advances. *Held:*

   (1) The note to H. was supported by sufficient consideration
and was valid in his hands.

   (2) Although the assignee of H. was not a holder in due
course, protected by the law merchant, yet the maker was es-
topped, as against him, to set up the defense of a failure of con-
sideration by reason of the breach of the payee's agreement.

2. The rule that a negotiable instrument in the hands of an assignee
for value and without notice of defenses, if he is not a holder
in due course, is subject to such defenses as were available
against his assignor, relates only to such defenses as existed
at the time of the assignment.

3. The doctrine of *estoppel in pais*, where it is applicable, is not
subordinate but supreme, staying the operation of other rules.

APPEAL from a judgment of the circuit court for Milwau-
kee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

Action to foreclose a mortgage. The issues raised by the
pleadings were closed by findings of fact, which may be pre-
sented as follows:

On March 19, 1903, defendant *Charles FitzGerald,* the
then owner of the premises described in the complaint, duly

mortgaged the same to defendant Herman to secure payment
·of said defendant *FitzGerald's* note, of like date, for $3,000,
·payable to the order of said Herman, three years after date,
·with interest at the rate of five per cent. per annum, and said
mortgage was duly recorded.   The transaction occurred pur-
·suant to an application by said defendant to said Herman for
a loan of $3,000, to be used in the erection of a building on
the mortgaged premises, the money to be advanced as fast as
the improvement progressed.   Upon the delivery of the note
and mortgage to Herman, he delivered to said defendant an
acknowledgment of the purpose thereof and, in effect, that
·he was indebted to said defendant to the amount of the loan,
·payable as before indicated.   March 20, 1903, said Herman
·borrowed of George Ellis $1,900, giving his promissory note
therefor, payable three months after date, and, for collateral
security for the payment of the debt, delivered to said Ellis
·said first-mentioned note and the mortgage, duly assigning
the same in writing, but not so as to enable the said Ellis
to record the assignment, and it never was recorded.   Before
·the commencement of the action plaintiff became the owner
of said $1,900 note and succeeded to all rights of said George
Ellis to said collateral security.   The said $1,900 note is
wholly unpaid as well as the interest thereon from its date.
No part of said $3,000 loan was ever paid to said *FitzGerald*,
nor could he ever collect any part thereof.   Herman was
known to *FitzGerald,* at the time the mortgage was given, to
·be engaged in dealing in notes and mortgages and in loaning
·money for himself and others on real-estate security.

On such facts the court concluded: First, the note and
·mortgage were given without consideration; second, neither
said Ellis nor plaintiff took said note in due course so as to be
entitled to the protection of the law merchant; third, the lat-
·ter holds the same subject to equities and defenses, including
the defense of failure of consideration, which said *Fitz-
·Gerald* would have, had the security remained in the hands of

Marling v. FitzGerald, 138 Wis. 93.

said Herman, and is, therefore, not entitled to enforce the same at all, and is liable to *FitzGerald* for his costs and disbursements in the action.

Judgment against plaintiff was ordered accordingly and was so rendered.

For the appellant there was a brief by *Goff, Hayes & Hannan,* and oral argument by *Guy D. Goff*.

For the respondent *FitzGerald* the cause was submitted on the brief of *Dorr & Gregory*.

MARSHALL, J.   The foregoing statement presents this proposition: If A. mortgages his property to B. to secure a loan of money, to be advanced from time to time, knowing that he is a dealer in such securities, B. agreeing to make the advancements at times and in a manner specified, and in harmony with the understanding between the parties placing the mortgage upon record, acquiring the status as to all the world of being the owner of the securities and a debtor to A. for the money agreed to be advanced, and thereafter B., for value, sells and duly assigns such securities to C., who takes the same without knowing of the relation of debtor and creditor between A. and B. under the agreement as to the advancement of money, the transaction between B. and C. not being such as to give the latter the protection of the law merchant, and B., neither before the assignment nor thereafter, advances the money or any part thereof to A. and wholly breaches his agreement in that regard, can C., nevertheless, enforce the note and mortgage against A. ?

If the proposition as stated be answered in the negative, as counsel for respondent contend it should be, and the learned circuit court decided, the judgment must be affirmed.   If, on the contrary, it be answered in the affirmative, as counsel for appellant contend it should be, the judgment must be reversed and the cause be remanded for judgment according to the prayer of the complaint.

The situation is governed by a few plain legal principles in respect to which the learned circuit court went astray.

Manifestly, the note was not without consideration to support it, merely because the money called for thereby was not advanced at the time it was given, nor at all. The agreement to advance the money, and the creation of the relations of debtor and creditor between Herman and *FitzGerald,* were amply sufficient to support the note, respecting the consideration feature, as the actual transition of the money from the former to the latter at the time the securities were delivered by the one to the other, would have been. That is too manifest to require discussion. The learned trial court, it seems, failed to distinguish between delivery of a note and mortgage by the payor to the payee for money to be advanced subsequently, the security to take effect presently,—and delivery thereof, but not to take effect till performance of a specified condition as to making the advancement. In the former circumstances, the security would be a valid obligation from the start, but in the latter, performance of the condition would be essential to such validity. *Nutting v. Minn. F. Ins. Co.* 98 Wis. 26, 73 N. W. 432; *Thorne v. Ætna Ins. Co.* 102 Wis. 593, 78 N. W. 920; *State ex rel. Jones v. Chamber of Comm.* 121 Wis. 110, 98 N. W. 930; *Golden v. Meier,* 129 Wis. 14, 107 N. W. 27; *Hodge v. Smith,* 130 Wis. 326, 333, 110 N. W. 192; *Ware v. Smith,* 62 Iowa, 159, 17 N. W. 459; *Belleville Sav. Bank v. Bornman,* 124 Ill. 200, 16 N. E. 210; *Merchants' Exch. Bank v. Luckow,* 37 Minn. 542, 35 N. W. 434; *Burke v. Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816.

Again the learned circuit court misapprehended the law in assuming, if the note would be subject to defenses as between *FitzGerald* and Herman, because of the latter not having kept his agreement with the former by advancing the money, the former could, under all circumstances, including the taking of the securities for value and in good faith without neg-

ligence, from Herman, by a third person, George Ellis, and without such taking having the essential of due course, of an indorsement of the note by Herman before maturity, make such defenses as against the third person. Such a situation is not governed absolutely by the law merchant. Before it can be solved in favor of the payor of the note, the familiar principle of equity, essential to the promotion of justice, must be dealt with, that if a person, by conduct, reasonably calculated to lead another to act upon the faith thereof, cause such other to act, without negligence and in such manner as to suffer damage if the appearances created by such conduct be not warranted by the true situation, such person is precluded from taking advantage thereof to such other's injury. Whether that would apply in a case of this sort; in case of a want of consideration to support the note, or in case of its not having validity as between the original parties except upon performance of a condition precedent which is not performed, or even in case of the maker not having any reasonable ground to apprehend a probability of the note being taken by a third person, for value, without apprehending the existence of any equities in regard thereto or being negligent in respect to the matter, need not be considered, because no such situation characterizes this case, as we have seen.

It would seem, upon principle, that the law of estoppel ought to govern this case in favor of appellant, especially since *FitzGerald* knew, or ought to have known, when he gave Herman the securities, that the latter was liable to transfer the same to another who would take the same as George Ellis did, in the exercise of due care, having a right to believe that they were just what they appeared to be. He put Herman in a position to easily delude another in that regard, even making no restriction as to a transfer of the paper or recording of the mortgage, notwithstanding knowledge of his business. Can one do that, and then take advantage of circumstances which such other had no knowledge of, nor any

reasonable ground to suspect, to such other's injury? Can one put up the bar of his own negligence and thereby save himself from loss by failure of another to perform an agreement with him, forming a full consideration for his note, and thereby effect, as to an innocent third person, a fraud to such third person's injury? It would seem that the principle of estoppel plainly arises to the contrary,—so plainly that illustration by reference to precedents to support such conclusion is not necessary.

Passing to the field of precedents we find, as would be expected, that the principle suggested has been often applied to situations the same or similar to the one before us, for the protection of the innocent third person, and search fails to enable one to discover where it has been invoked in vain. On this, many cases cited by the learned counsel for appellant show so clearly the trend of authority that we will refer thereto with others: *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 78 N. W. 440; *Loizeaux v. Fremder,* 123 Wis. 193, 101 N. W. 423; *Marling v. Nommensen,* 127 Wis. 363, 106 N. W. 844; *Bogart v. Stevens,* 69 N. J. Eq. 800, 63 Atl. 246; *Bush v. Cushman,* 27 N. J. Eq. 131; *Combes v. Chandler,* 33 Ohio St. 178; *Wilson v. Hicks,* 40 Ohio St. 418; *McNeil v. Tenth Nat. Bank,* 46 N. Y. 325; *Moore v. Metropolitan Nat. Bank,* 55 N. Y. 41; *Davis v. Beckstein,* 69 N. Y. 440; *Boardman v. L. S. & M. S. R. Co.* 84 N. Y. 157, 182; *Parker v. Conner,* 93 N. Y. 118; *Simpson v. Del Hoyo,* 94 N. Y. 189; *Cable v. Ellis,* 86 Ill. 525; *Marshall v. Ender,* 20 Ill. App. 312; *Atlanta G. Co. v. Hunt,* 100 Tenn. 89, 42 S. W. 482; *Kempner v. Huddleston,* 90 Tex. 182, 37 S. W. 1066; *Norfolk & W. R. Co. v. Perdue,* 40 W. Va. 442, 21 S. E. 755; 1 Jones, Mortgages (6th ed.) § 683.

In the text-book referred to the rule is laid down thus:

If a person induces another to take an assignment of the mortgage from the holder of it "upon the representation that it is a good and valid security" he cannot subsequently im-

peach the validity of the mortgage "in the hands of such assignee. Having by word or deed induced another to part with his money for the security, he is not allowed to repudiate the truth of his representation, and escape the payment of the obligation by showing that, as between himself and the former holder," it was invalid.

Whether that applies generally we need not now decide or go further than the facts of this case.

The principle stated is not restricted to acts or representations directly between the maker of the securities and the assignee. Constructive representations, conduct equivalent to actual representations, as by giving to the holder of securities all of the characteristics of ownership, so he may hold and transfer the same with all the usual appearances of absolute right to do so and with reasonable knowledge that he will or may do so, is certainly sufficient. That runs through all the cases cited and many more that might be referred to. True, such cases do not all exactly fit the facts of this case, but they do so in principle. *Bush v. Cushman, supra,* is exactly in point, when we consider that conduct equivalent to actual representation, *inter partes,* is likewise equivalent thereto in effect, as to *estoppel in pais.* It is particularly applicable here, since *FitzGerald,* as we have seen, must have known from the nature of Herman's business that he was liable to and probably would sell the securities to some person without disclosing the nature of his business relations with the payor.

*Bogart v. Stevens, supra,* is quite like this case. We are unable to see any material distinction between clothing an agent with the semblance of being the owner of securities accompanied by actual authority to transfer the same for value, and vesting the actual title to such securities in a person with all the semblance of absolute ownership, knowing that he is liable to, and probably will, transfer them to another, for value, having no knowledge, or reasonable means of knowledge, of any present or future defense thereto.

In *McNeil v. Tenth Nat. Bank, supra,* it is said, in effect, that, except as regards the effect of the law merchant, an assignee of assignable papers obtains no greater right than his assignor possesses; but said the court:

"It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

Counsel for respondent place their sole reliance on the idea that the note was without consideration at the start, hence without validity, which is wrong, as we have seen, and on the law merchant as incorporated into sec. 1676—19 of the Negotiable Instrument Statute (ch. 356, Laws of 1899), to the effect that the taker for value of a negotiable instrument without indorsement takes no better title than his assignee had thereunder, and sec. 1676—28, to the effect that a holder of negotiable paper, who does not acquire it in due course, is subject to the same perils as regards defenses by the payor as the payee was. Those rules, as we have seen, give way to the supreme rule of *estoppel in pais.* We are referred with confidence to *Boyle v. Lybrand,* 113 Wis. 79, 88 N. W. 904. Suffice it to say, we are unable to see that it touches the question in hand.

We are further referred to *Rapps v. Gottlieb,* 142 N. Y. 164, 36 N. E. 1052, where the court grounded its decision on the doctrine that an assignee, without indorsement, of negotiable paper, takes it subject to all the defenses available as to the original parties, holding it to be applicable because the note and mortgage in question never had validity as obliga-

tions, since they were delivered to the named payee to take effect according to their tenor and not otherwise at all, only upon the happening of a condition precedent. Under those circumstances, negligence or inexcusable holding out on the part of the payor essential to efficient application of the doctrine of *estoppel in pais* was not found to exist. Without appreciation of the precise grounds for the decision, one would be quite liable to be led astray, especially in view of a brief discussion at the closing of the opinion of the invocability of the doctrine of *estoppel in pais*. The court reasoned thus:

"It is a rule of last resort, applicable only where all others fail; it is a doctrine subordinate and not dominant, which reverses no other, but submits to the authority of all, and is adequate to an ultimate decision only when it has the field to itself."

As those expressions are liable to be understood they hardly give proper dignity to the doctrine of *estoppel in pais*. True it is a rule of last resort, but where it is applicable it is not subordinate. It stays the operation of other rules which have not run their course, when to allow them to proceed further would be a greater wrong than to permanently enjoin them. It is a rule of justice which, in its proper field, has a power of mastery over all other rules. It is a rule, by no means to be discredited, but rather one entitled to the distinction of being one of the greatest instrumentalities to promote the ends of justice which the equity of the law affords.

There is this further insurmountable difficulty in sustaining the judgment: The rule that a negotiable instrument in the hands of an assignee for value and without notice of defenses as between the original parties is subject, nevertheless, to such defenses, has relation to such equities or defenses as existed at the time of the transfer, not to latent defenses or equities which possibly may at some future time exist. As said in *Bush v. Cushman*, 27 N. J. Eq. 131: It does not embrace "equities or defenses springing from defaults, or even fraud of the assignor, committed subsequent to the assign-

ment, and which had no existence, and were simply possibilities, at the time of the assignment."

The same doctrine was applied in *Coster v. Griswold,* 4 Edw. Ch. 364, 374. The views of the court are thus expressed:

"All that the court of law or equity can do in such cases, since they recognize and protect the rights of assignees of choses in action, is, to allow them to take, subject always to any defense, legal or equitable, which existed in favor of the debtor against the original holder or creditor at the time of the transfer or assignment. Now, the question arises: What existing equity or defense was there against these bonds . . ." when they were pledged to the "United States Bank as collateral security . . ."? And, again, "Where an assignee takes in good faith, his right to hold will not be disturbed or divested by any subsequent event or after-accruing right or equity of the debtor."

To the same effect are *Chance v. Isaacs,* 5 Paige Ch. 592; *Cornish v. Bryan,* 10 N. J. Eq. 146; *Losey v. Simpson,* 11 N. J. Eq. 246, 253; *Murray v. Lylburn,* 2 Johns. Ch. 441, 442; *Flemming v. Hoboken,* 40 N. J. Law, 270; *North Bergen v. Eager,* 41 N. J. Law, 184, 189; *Ex parte Hale,* 3 Ves. Jr. 304; *Terney v. Wilson,* 45 N. J. Law, 282.

Here, as we have seen, at the time of the assignment to George Ellis, Herman was the absolute owner of the note and mortgage. They were not waiting upon the happening of any event to give them validity. Herman owed Ellis $3,000, but was not in default. He had, at best, a possible contingent defense or equity. Under those circumstances, within the authorities cited, Ellis could safely take, in good faith, for value, the note from Herman. The latter's subsequent mere default could not operate to his prejudice.

*By the Court.*—The judgment is reversed, and the cause remanded for judgment according to the prayer of the complaint.

BARNES, J., dissents.