## ROBERT B. GRAHAM v. M. W. SAVAGE and Another.[1]

### May 6, 1910.

### Nos. 16,284—(65).[2]

**Parol Evidence Varying Written Contract — Exception to Rule.**

    Exceptions to the rule which excludes parol evidence varying or contradicting a complete and unequivocal written contract are recognized only when clearly necessary and proper, because of their natural tendency to invite perjury and fraud and to deprive formal agreements of their certainty.

**Same — Case Followed.**

    Ordinarily when a written contract is made and delivered, and nothing remains to complete its execution, parol evidence is inadmissible to prove an understanding that it should not be operative according to its terms. McCormick Harvesting-Machine Co. v. Wilson, 39 Minn. 467, followed and applied.

**Same.**

    The law has recognized as an admitted exception to this rule that no legal obligation is created by a document which concerns merely transactions of friendship and the like, as in an instrument executed to console a dying person or to calm a lunatic.

**Same.**

    This exception does not permit parol evidence to be introduced to show that

[1] Reported in 126 N. W. 394.     [2] October, 1909, term calendar.

---

[Note] Parol evidence to vary, add to, or alter a written contract, see note to Durkin v. Cobleigh (Mass.) 17 L.R.A. 270.

what purported to be a complete written contract is in effect a sham, and is designed to be used for purposes of deceit and fraud.

**Same.**

A contract admitted to be a legal act cannot be shown by words of mouth to have been agreed not to be observed according to its terms.

**Same — Reversible Error.**

Plaintiff sought to recover from defendant commissions for "placing and sale of its capital stock." Defendant admitted employment of plaintiff as a "stock solicitor and salesman for the stock," in accordance with the written agreement to pay the "agent as commission on all sales made and closed by agent [a given per cent.] of the amount of purchase price of each sale of stock made and closed by agent." Plaintiff was permitted to amend, so as to allege "that in place of a sale the taking of the subscriptions for stock was the contract," and to show by parol that plaintiff had executed the written agreement as a matter of friendship for, or accommodation to, defendant, because defendant "wanted to show the other stock salesmen that [plaintiff] was drawing no more than they." It is *held* that it was reversible error to receive such oral proof over defendant's objection.

[Action in the district court for Hennepin county against M. W. Savage, doing business as the International Securities Company, and Minneapolis, St. Paul, Rochester & Dubuque Electric Traction Company to recover $1,983.30. The separate answer of defendant Savage alleged that plaintiff was employed under a certain written contract, a copy of which was made a part of the answer, and alleged full payment by defendant. The case was tried before Holt, J., and a jury which returned a verdict in favor of plaintiff for $1,338.-70. From an order denying defendant's motion for a new trial, defendant Savage appealed. Reversed and new trial ordered.]

Plaintiff and respondent sought to recover from defendant and appellant a money judgment in a named sum. The complaint alleged that between certain dates said plaintiff at defendant's request performed services "in the placing and sale of the capital stock of the said defendant," for which defendant promised to pay a named sum, and prayed judgment for the balance, less payments made, with interest. The defendant answered, admitted the employment of plaintiff "as a stock solicitor and salesman for the stock" pursuant to a written contract made a part of the complaint, alleged other matters not here material, except as may hereinafter appear, denied

the indebtedness, and prayed that plaintiff be thence dismissed. The written contract set forth an agreement to pay plaintiff "agent as commission on all sales made and closed by agent a sum equal to ten per cent. of the amount of purchase price of each sale of stock made and closed by agent as aforesaid."

During the course of trial defendant objected to the admission of certain testimony concerning a meeting to which plaintiff had brought a "subscription heading for stock." The court thereupon permitted plaintiff to so amend the complaint as to allege "that in place of a sale the taking of the subscriptions for stock was the contract." The trial then proceeded. Plaintiff admitted that he had signed the written contract previously referred to at some time. He then testified, notwithstanding objection, that a representative of the defendant requested him to sign the contract. He read it over, and told the representative he "couldn't do it; it was absolutely contrary to [his] arrangement." He was asked to sign it "as a personal favor." The representative insisted on all the other agents and salesmen doing the same thing. "It would be a personal favor to him, and we could go right along and work under the old arrangement, and it wouldn't have any bearing on my connection at all." The representative said, after it was signed: "You are working on the same basis, just [the] same as when you came in."

Plaintiff was corroborated by another witness, who said that the representative of defendant informed plaintiff that it made no difference so far as the previous contract was concerned; that he wanted it to show the other stock salesmen that plaintiff was not drawing any more than they. Plaintiff said under the circumstances he would sign it; but the supposition was that it was not to interfere with his previous contract.

The representative of the defendant testified that plaintiff made no objection at the time to signing the contract, and that "the contract as signed contained and embodied the oral agreement theretofore entered into between [him] and [plaintiff] * * * with the exception of the drawing account, which wasn't embodied in this contract; it had been terminated."

The court submitted the issues to the jury, which found for plain-

tiff. Defendant moved for a new trial, and appealed to this court from the order denying his motion.

*M. H. Boutelle* and *N. H. Chase*, for appellant.

*James A. Peterson* and *H. F. Woodard*, for respondent.

JAGGARD, J., (after stating the facts not within [] as above).

Defendant's exceptions involve a number of alleged errors which, in the view we have taken, it is not necessary to here discuss. The gist of the controversy is whether the rule as to the exclusion of parol evidence justified the trial court in receiving evidence of an oral agreement, made prior to the execution of the written agreement, and contradictory thereof. The trial court charged in part: "If the written contract * * * be the contract under which [the plaintiff] worked, then it ends the case, and the verdict must be for the defendants, because under the terms of the written contract the compensation did not come due and payable till the subscribers paid in the money for the stock, and it appears that plaintiff has been paid ten per cent. on all sums that have been paid in on the subscriptions taken by plaintiff, and, in addition, sufficient to balance the amount claimed by plaintiff for expenses." To this plaintiff took no exception, and from this he has not appealed. The testimony, moreover, necessitated the charge.

It should be presumed that the rule as to the exclusion of parol evidence is founded on obviously sound public policy. Exceptions to it are allowed only when clearly justified. The burden is on the proposer to show the necessity and propriety of the suggested exception. An indiscriminate or a ready recognition of exceptions would practically annul the rule itself. It would not only be an invitation to fraud and perjury, but it would deprive written contracts of their certainty, and render prudent men almost powerless to surely protect themselves. The danger involved and the caution to be exercised in this matter has been emphasized by courts so frequently as to render citation of the many authorities a work of supererogation. See however Minneapolis T. M. Co. v. Davis, 40 Minn. 110, 41

N. W. 1026, 3 L.R.A. 796, 12 Am. St. 701; Mitchell, J., in Smith v. Mussetter, 58 Minn. 159, 161, 59 N. W. 995.

It is no answer to urge that in particular cases injustice may result from the refusal to recognize an exception. The same objection is the traditional one urged against the statute of frauds. The relevant general rule as to the exclusion of oral testimony was thus formulated in McCormick Harvesting Machine Co. v. Wilson, 39 Minn. 467, 40 N. W. 571: "Where a written contract is made and delivered, and nothing remains to complete its execution, parol evidence is inadmissible to prove an understanding that it shall not be operative according to its terms." A defense to a written contract made out by such evidence is subject to suspicion. The admission of such evidence should be cautiously allowed to avoid mistake and imposition. It should be confined to cases clearly within the reason. Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127.

This general rule is of so universal adoption that it would be idle to collate authorities to sustain it. It is important, however, to distinguish between cases falling under it from essentially different cases wherein parol evidence may be admitted to show, not an oral agreement not to enforce an obligation, but a condition which must be subsequently fulfilled before the obligation comes into existence; for it may properly be shown by parol that a contract is not to become effective as a legal act if its consummation is suspended until the happening of a condition precedent. 4 Wigmore, Evidence, 3435, § 2435; Westman v. Krumweide, 30 Minn. 313, 15 N. W. 255; Smith v. Mussetter, 58 Minn. 159, 59 N. W. 995; Reynolds v. Robinson, supra, Nutting v. Minnesota, 98 Wis. 26, 73 N. W. 432; Ware v. Allen, 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563; Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698—to which plaintiff refers us, are of this class.

There is, however, a more nearly allied group of exceptions to the general rule. Mr. Wigmore distinguishes three classes of cases namely: (1) By the general principle of legal acts no legal obligation is created by a document which concerns merely transactions of friendship and the like. (2) Where the obligation is a negotiable instrument, different considerations may control. (3) Where an

agreement not to sue is made subsequent to the original and written agreement (as in Geiser Mnfg. Co. v. Yost, 90 Minn. 47, 95 N. W. 584; Dowagiac Mnfg. Co. v. Watson, 90 Minn. 100, 95 N. W. 884). 4 Wigmore, Evidence, § 2435. In the case at bar the situation is narrowed by the testimony to the first class of cases. Defendant wanted the agreement signed "to show the other stock salesmen that he was drawing no more than they;" whereas, under the oral agreement, he was to draw substantially more.

The question presented to this court is whether an exception should be made to the general rule of exclusion—whether parol evidence should be received to show that a complete and executed agreement was agreed to be inoperative and a sham. The avowed purpose was to deceive and potentially to defraud; for it is quite clear that, if another salesman, who, having been shown the written contract between plaintiff and defendant, had in reliance thereon executed a similar contract with defendant, and if on discovering the truth had refused to perform such contract, and if a suit for breach of the contract had been brought by defendant against such salesman, no recovery could be had because of the employer's express fraud. We think it is clear that the court should not vary the general rule as to the exclusion of evidence by making an exception in aid of such an illegitimate purpose and in violation of common honesty. So to do would endanger the rights of both the employer and the employee, for, at the unscrupulous whim of either, the other would be exposed as to the written contract of employment to the danger of its impeachment or avoidance by mere words of mouth. The contract solemnly reduced to writing by the parties would be of uncertain or conjectural force. Neither party could base business calculations upon the assumption of its legal validity.

This view we think is sustained by authority. In Town of Grand Isle v. Kinney, 70 Vt. 381, 41 Atl. 130, it was held that, under an agreement to pay a deficiency in the amount to be raised by a town, in order to enable it "to contract for the construction of [a] bridge," evidence of the parties that the agreement was executed solely to enable the town to obtain a certificate of the state engineer that sufficient funds were provided for the construction of the bridge is in-

admissible, as showing the agreement to be a device contrived to deceive the engineer. Ross, C. J., said: "The law does not allow parties to a contract to show that it was gotten up as a sham, or to deceive and defraud." And see Blodgett v. Morrill, 20 Vt. 509; Conner v. Carpenter, 28 Vt. 237.

Such is the opinion of Mr. Wigmore. In section 2406, vol. 4, p. 3380, in treating of the rule as to exclusion of parol evidence, he sets forth that the subject must concern legal relations. Where the transaction concerns a jest, friendship, charity, or pretense, the ordinary rule he shows does not apply. "The father who promises to bring home a box of tools for his boy is not bound in contract, though the same promise to his neighbor may be binding.    *    *    * When the document is to serve the purpose of a mere sham, this principle in strictness exonerates the makers; but a just policy would seem to concede this only when the pretense is a morally justifiable one (as to calm a lunatic or to console a dying person), and not when it is morally beyond sanction." He regards as "unsound" Southern v. Metropole, 91 Md. 61, 46 Atl. 513, in which a written advertising contract was held to be shown by parol to have been signed merely for exhibition to other advertisers to induce them to pay stated rates. It is to be noted, however, that in this case the attention of the court was not directed to the consideration. Nor is there any animadversion to it by the court.

In Humphrey v. Timpken, 12 Okla. 413, 75 Pac. 532, oral evidence was offered to show that plaintiff signed an order to be used only to enable the plaintiff to sell and ship goods to a third person without danger of being then attached by other creditors of such third person. In the supplement to Wigmore, Evidence, 255, this case also is regarded as unsound. In these cases, and in the New York cases upon which they and cases of this kind are generally based (Grierson v. Mason, 60 N. Y. 394; Julliard v. Chaffee, 92 N. Y. 529), and Pym v. Campbell, 6 El. & Bl. 370, the feature of illegitimacy does not appear to have been presented to the court and was not expressly passed upon. They are not, therefore, strictly in point.

The conclusion follows that, if plaintiff's contention be construed as meaning that the contract was of no effect at all as a legal act,

then such construction must fail. If, however, what plaintiff insists upon is that the contract was a legal act, but was not to be observed in its terms, especially with reference to the term which prescribed the circumstances under which plaintiff was to be entitled to a commission, then clearly parol evidence should have been excluded. See 4 Wigmore, 3434, § 2435.

Plaintiff has placed great stress upon the fact that subsequently to the execution of the written contract he was advanced considerable sums of money not required nor contemplated by the terms of the written contract, and that there were other transactions between the parties inconsistent with it. It is to be noted, however, that in this case no issue was raised by the pleadings concerning the abandonment of the written contract. The charge of the court eliminated such a defense. In that charge defendant acquiesced. This renders insignificant the group of cases to which plaintiff refers us on this subject.

In so far as this testimony tends to confirm plaintiff's oral evidence that the written contract did not express the actual agreement, it may be conceded that it was as cogent as plaintiff insists. This is, however, not significant here, because the verdict of the jury compels the assumption upon which this opinion has proceeded—that plaintiff's testimony was true and his version of the agreement correct. In so far as this tends to show a practical construction of the contract by subsequent conduct of the parties, it did not tend to affect the particular written provision that plaintiff was to receive compensation only for stock sold and paid for, nor to justify oral proof on that subject.

As to the actual state of accounts between plaintiff and defendant, calculated on payments of commission according to the written contract, no opinion is here expressed.

Reversed, and a new trial ordered.