**Paul J. HRUSKA, plaintiff and defendant on counterclaim, Appellant,**

v.

**CHANDLER ASSOCIATES, INC., defendant and counterclaimant, Respondent,**

v.

**Scott BAGNE, et al., defendant and additional defendant on counterclaim, Respondent.**

**No. C3-84-342.**

Court of Appeals of Minnesota.

Oct. 16, 1984.

Michael D. Klampe, Klampe & Pingatore, Rochester, for appellant.

William Z. Pentelovitch, Maslon, Edelman, Borman & Brand, Minneapolis, for Chandler Associates, Inc.

David M. Hunt, Hunt, DeVinny, Young & Smith, Rochester, for Scott Bagne, et al.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

Chandler Associates (Chandler), an insurance agency, brought a declaratory judgment action to resolve the interpretation of an employment contract between Chandler and Paul Hruska, an insurance agent. Chandler assigned Hruska's contract to

Scott Bagne, the successor owner of the agency, on August 2, 1982. The trial court granted summary judgment, holding the assignment of the contract valid.

On September 7, 1983, after trial, the court ruled: (1) Chandler correctly calculated the amount due under the severance benefit clause of the contract; (2) the penalty statute for late payment of compensation did not apply; and (3) the covenant not to compete and damage claim were dismissed because Chandler and Bagne materially breached the employment contract. The court failed to rule regarding the new business commissions due Hruska.

Hruska's motion for amended findings, conclusions of law, order for judgment or a new trial was denied and he appealed from the judgment entered. We affirm and reverse in part, and remand.

## FACTS

Appellant Paul Hruska was part owner of Pendle-Hansen-Bagne, Inc., an insurance agency. He worked for the firm as an insurance sales agent. In January 1980, Chandler bought all the stock of the Pendle-Hansen-Bagne corporation. Hruska contracted to work for Chandler as an insurance agent for $36,000 per year, plus $300 per month expenses.

In addition, under Article 6(A)(1) of the employment contract he was to receive:

Twenty-eight (28%) percent per month of the net commission income received by Employer payable on a monthly basis for thirty-six (36) consecutive months, arising out of that total book of business sold and serviced by Employee prior to Employee's sale of stock to Employer.

Article 6(B) provides that the payments to appellant are to be made quarterly.

The contract contained a covenant not to compete for three years after involuntary termination or five years after a voluntary quit.

Hruska worked until April 1, 1982, when Chandler sold the business and assigned Hruska's employment contract to Scott Bagne. Bagne refused to honor the salary terms of the contract contending he accepted only the noncompete provisions of the contract.

Bagne offered Hruska a salary of $20,-000 a year and requested vouchers for all business expenses. When Hruska refused to work under the new terms, Bagne requested Chandler to fire Hruska. Hruska was fired June 18, 1982, two weeks after the summary judgment hearing.

## ISSUES

1. Should parol evidence be admitted to interpret the terms of the written contract?

2. Should a penalty be assessed against respondent as provided in Minn.Stat. § 181.13?

3. Was Hruska entitled to new business commissions?

4. Was the noncompete covenant void?

## ANALYSIS

1. Hruska contends the trial court erred in refusing to admit parol evidence of negotiations to clarify the price Hruska was to receive for his stock under articles 6(A) and (B) of the contract.

■ Under the parol evidence rule, evidence outside a written document may not be used to vary or contradict the unambiguous terms of the document. *Hield v. Thyberg*, 347 N.W.2d 503, 507 (Minn.1984); *Fena v. Wickstrom*, 348 N.W.2d 389, 390 (Minn.Ct.App.1984).

[However,] where the parties have entered into a written contract, complete and unambiguous on the consideration to be paid, but it is claimed that the consideration was not as stated so that the contract might be used to mislead or deceive a third party, parol evidence is usable; but the party seeking to vary the terms of the written contract in this situation has the burden of establishing his claim by clear and convincing evidence.

*Hield v. Thyberg*, 347 N.W.2d at 508 (decided after the trial court's ruling).

Hruska claims Chandler's purpose in not stating the complete purchase price for ap-

pellant's stock in the contract was to deceive the Internal Revenue Service. Hruska's offer of proof included how the purchase price was disguised and transfered to the severance pay provision to reflect a lower purchase price.

■ We find Hruska made a sufficient showing the "contract might be used to mislead or deceive a third party." *Id.* Therefore, the trial court erred by refusing to admit the proffered parol evidence.

2. Appellant claims the trial court erred by not assessing a penalty against respondent as provided in Minn.Stat. § 181.13 (1982). When an employee is discharged, the wages or commissions *actually earned and unpaid* at the time of such discharge shall become immediately due and payable upon demand of such employee, * * * and if not paid within 24 hours after such demand, * * * such discharged employee may charge and collect the amount of his average daily earnings at the rate agreed upon in the contract of employment, for such period, not exceeding 15 days * * *.

*Id.* (emphasis added).

Hruska made the statutory demand in August 1982. Under the contract, however, he was not entitled to payment until March 15, 1983. Since Hruska did not repeat his demand after that date, the trial court found he was not entitled to the statutory penalty.

■ We find Hruska's August 1982 demand satisfied the notice requirement of Minn.Stat. § 181.13, since the wages were earned and to be paid later. An employee is not required to make a second demand once the employee has demanded payment for wages earned.

3. Appellant claims the trial court erred by not awarding new business commissions. The employment contract provided:

Article 3. The Employer shall pay to the Employee Thirty-Six Thousand and No/100 ($36,000.00) Dollars as a base salary in equal monthly installments during the first year of this agreement, plus fifty (50%) percent of the net commission income received by Employer from new accounts secured by Employee, payable on or about March 15 following the employment year during which said commission payments accrue. The base salary for the second employment year, and each year thereafter, shall be that amount equal to thirty (30%) percent of the amount of the commission on the total 'book of business' of all commissions actually received by Employer prior to the end of the fiscal year of Employer on all policies of insurance sold by Employee and serviced by the Employee while employed by the Employer, but no less than Thirty-six Thousand and No/100 ($36,000.00) Dollars.

Appellant received new account commissions for 1980, but not for 1981 and 1982. He argues article 3 entitles him to a bonus for new business commissions each year. We agree.

■ If the parties intended to restrict bonuses for new business commissions only to the first year of employment, the contract could have specified the income be payable on or about March 15, 1981, rather than "on or about March 15 following the employment year during which said commission payments accrue."

The undisputed amount for commissions from new accounts secured during 1981 and 1982 is $6,184.25. Appellant is entitled to it together with prejudgment interest since the amount is liquidated.

4. Respondents claim the trial court erred by declaring the noncompete covenant void because of their material breach.

■ The trial court applied the doctrine of unclean hands and refused to enforce the noncompete covenant because of Bagne's and Chandler's breach of the contract. Respondents claim the doctrine of unclean hands should not be applied because the noncompete and compensation covenants are independent. We disagree.

The equity rules, that he who seeks equity must do equity, and that he who comes into equity must come with clean hands, are recognized and followed by all

the courts. * * * These rules or maxims operate to deny relief to or from conduct which is fraudulent, illegal, or unconscionable. The misconduct need not be of such a nature as to be actually fraudulent or constitute a basis for legal action. The plaintiff may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others. *Johnson v. Freberg*, 178 Minn. 594, 597–98, 228 N.W. 159, 160 (1929).

The trial court correctly applied the doctrine. Moreover, respondents acted in bad faith by waiting until after the summary judgment hearing to fire Hruska.

### DECISION

We affirm the trial court's decision the noncompete clause is void. We reverse and remand for trial with the following instructions: (1) admit parol evidence to interpret the employment contract; (2) apply Minn. Stat. § 181.13 to allow appellant to recover penalty payment; and (3) enter judgment for $6,184.25 for new business commissions together with prejudgment interest.

Affirmed and reversed in part, and remanded.